# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MOZELL PAUL GOUDEAU, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. CIV-13-240-M |
| | ) |
| JANET DOWLING, Warden, | ) |
| | ) |
| Respondent. | ) |

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing *pro se*, seeks a writ of habeas corpus under 28 U.S.C. § 2254. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). The Respondent has filed a Response, (ECF No. 15), to which Petitioner has not replied. For the reasons set forth below, it is recommended that the Petition for habeas relief be **DENIED**.

## I. Background

Petitioner was tried and convicted on charges of Robbery with a Dangerous Weapon, After Former Conviction of Two or More Felonies, Case No. CF-2009-282, District Court of Grady County, State of Oklahoma. He was sentenced to life imprisonment. Petitioner appealed his conviction to the Oklahoma Court of Criminal Appeals (OCCA). His conviction and sentence were affirmed.

At Petitioner's trial, Mr. Charles Mackey testified about the robbery of his Chickasha, Oklahoma home. Mr. Mackey stated that that around 4:00 p.m. on the afternoon of July 24, 2009, he was surprised by an unknown assailant, later identified as Petitioner, who put his hand over Mr. Mackey's mouth, put a knife to his throat and

threatened to cut him if he moved or made any noise. The assailant then used a rope to secure Mr. Mackey's hands in front of his body. The assailant rummaged through items on and in Mr. Mackey's desk, taking, among other things, Mr. Mackey's gun. The Assailant made no effort to disguise his appearance, and Mr. Mackey testified he would never forget the assailant's face. He described his assailant as an African American man who wore a red shirt. When the assailant left the room, Mr. Mackey heard him gathering items from the back bedroom where Mr. Mackey's son, Christopher Allen Mackey, was staying. Taking bags of papers, ammunition, Christopher Mackey's medication, as well as Mr. Mackey's cell phone, billfold with credit cards and money, the assailant left through the front door. (TR. 320-357).[1]

After the assailant left, Mr. Mackey ran outside to seek help. Christopher Mackey arrived approximately the same time his father had exited the house. Christopher Mackey called the police and then walked across the street to a furniture store and asked if any of the employees had witnessed the home invasion. Aurelia Chaney, then an employee at the furniture store said she had. (TR. 128-133).

Aurelia Chaney testified that she had seen unusual activity from the furniture store where she was outside taking a break. She described the pickup truck she saw parked outside as a two-toned, older truck. She further testified that she had seen a person carrying a laundry basket full of items from Mr. Mackey's house, put the basket in the bed of the truck, and slide in after it. The person who had stayed in the driver's seat of the truck during the robbery then drove away. (TR. 147-158).

---

[1] "TR." refers to the consecutively-numbered pages in the trial transcript.

Mr. Harrison Hodge testified that Petitioner came to his home a few days after the incident and bragged that he had robbed an "old man" and had gotten away with it. Mr. Hodge further testified that Petitioner stated he was planning to rob an old woman who lived alone and had a safe. (TR. 250-263)

Jeremy Alexander, a police officer working in Chickasha, Oklahoma, testified that on July 26, 2009, he located a truck which matched the description of the truck described as the one parked in Mr. Mackey's driveway on the day of the robbery. The three people in the truck identified themselves as Shaun Daugherty, the driver and owner of the truck, his wife Winter Daugherty, and a passenger, named Keiston Price. Officer Alexander testified that he had asked Mr. Price if he knew anything about any home invasions. Mr. Price told Officer Alexander that a person named "Mo" and a person known as "Ducky" had borrowed Mr. Daugherty's truck for several hours on the afternoon of July 24, 2009. Because Mr. Daugherty did not have a valid driver's license, he was arrested, the truck was impounded, and the officers performed an inventory search. Among other items in the truck was a piece of rope, the composition of which was consistent with the rope used to secure Mr. Mackey's hands during the home invasion. (TR. 179-195); (197-213).

## II.  **Grounds for Federal Habeas Corpus Relief**

Petitioner raises the same grounds for relief raised in his direct appeal—eight in all. In fact, Petitioner has merely rephrased and renumbered the issues raised by his appellate counsel before the OCCA and attached the portions of his Appellate Brief which support the various grounds for relief. For purposes of clarity, this Court will

consider each ground for relief in the order it was raised in Petitioner's Appellate Brief and addressed by the OCCA. (*See* ECF No. 15-1); (ECF No. 15-3).

(1) Inadmissible hearsay denied Petitioner's right to a fair trial and the right to cross-examine witnesses against him. (ECF No. 15-1:9-15); (ECF No. 15-3:2-4).

(2) Mr. Mackey's in-court identification of Petitioner was unreliable as it was a product of a highly suggestive environment. (ECF No. 15-1:15-24); (ECF No. 15-3:4).

(3) Evidentiary harpoons deprived Petitioner of a fair trial. (ECF No. 15-1:24-31); (ECF No. 15-3:4-5).

(4) Prosecutorial misconduct constituted fundamental error and deprived Petitioner of a fair trial. (ECF No. 15-1:31-36); (ECF No. 15-3:5).

(5) The State's introduction of evidence of a suspended sentence on one of Petitioner's previous convictions constituted plain error. (ECF No. 15-1:36-38); (ECF No. 15-3: 5-6).

(6) Petitioner was prejudiced by ineffective assistance of trial counsel. (ECF No. 15-1:38-43); (ECF No. 15-3:6).

(7) Petitioner's life sentence is excessive. (ECF No. 15-1:43-48); (ECF No. 15-3:6-7).

(8) The cumulative effect of errors deprived Petitioner of a fair trial. (ECF No. 15-1:48-49); (Not addressed by OCCA).

### III. **Standard of Review**

The standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d) (AEDPA) applies to all grounds for habeas relief raised in this action. Under AEDPA, a petitioner is entitled to federal habeas relief only if an adjudication on the merits by a state's highest court "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" *Id.* (28 U.S.C. § 2254 (d)(1)). This standard "reflects the view that habeas corpus is a guard against extreme malfunctions in the

4

state criminal justice system, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, ___, 131 S. Ct. 770, 786 (2011) (internal quotation and citation omitted). This Court must first determine "whether the principle of federal law on which the petitioner's claim is based was clearly established by the Supreme Court at the time of the state court judgment." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006); *see also Hooks v. Workman*, 689 F.3d 1148, 1163 (10th Cir. 2012).

"Clearly established law" consists of Supreme Court holdings in cases where the facts are similar to the facts in the petitioner's case. *See House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If clearly established federal law exists, this Court then considers whether the state court decision was contrary to or an unreasonable application of that clearly established federal law. *See Bland*, 459 F.3d at 1009. "A decision is 'contrary to' clearly established federal law . . . if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts . . . materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from the result reached by the Supreme Court." *Id.* (quotations omitted) (alterations in original). "As a condition for obtaining federal habeas relief, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 131 S. Ct. at 786-87.

Throughout the analysis, the court must presume the state court's factual findings are correct unless the petitioner rebuts that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## IV. Analysis

### 1. Hearsay Evidence and Confrontational Rights

Plaintiff contends that hearsay evidence was improperly admitted when police investigators repeated statements in their trial testimony made by individuals who were unavailable to testify at trial. He contends that the introduction of this evidence violated his rights under the Confrontation Clause of the Sixth Amendment.

On direct appeal, the OCCA considered the merits of Petitioner's challenge to the admission and use of the extrajudicial statements at issue:

> Proposition One argues inadmissible hearsay violated Appellant's rights under the Confrontation Clause of the Sixth Amendment. Appellant preserved hearsay objections to the statements in question, but failed to object on confrontation grounds. We review the Confrontation Clause arguments for plain error, which is error that goes to the foundation of the case or takes from the defendant a right essential to his defense. *Taylor v. State*, 2011 OK CR 8, ¶ 14, 248 P. 3d 362, 368. The district court properly admitted the extrajudicial statements of Winter Daugherty, Shaun Daugherty, Keiston Price, and Gary Hayes for a non-hearsay purpose. The admission of this evidence did not violate the hearsay rule. 12 O.S. Supp.2002, § 2801(3).
>
> The prosecutor later misused the evidence by arguing that these extrajudicial statements proved Appellant's possession of the truck on the day of the robbery. Used in this way, the evidence became testimonial hearsay[2] that implicated Appellant's Sixth Amendment right to confrontation. *Crawford v. Washington*, 541 U.S. 36, 59 n. 9, 124 S.Ct. 1354, 1369 n. 9, 158 L. Ed. 2d 177 (2004) (holding Confrontation Clause ordinarily "does not bar the use of

testimonial statements for purposes other than establishing the truth of the matter asserted"); *but see Tennessee v. Street*, 471 U.S. 409, 414, 105 S. Ct. 2078, 2082, 85 L. Ed. 2d 425 (1985) (cited for this proposition in *Crawford, supra*) (if jury is asked to infer that extrajudicial statement, admitted for *non-hearsay* purpose, is evidence of guilt, the statement is hearsay and implicates Confrontation Clause).

Because Appellant had no opportunity to cross-examine these apparently unavailable witnesses at trial or at any prior proceeding, the State's use of their extrajudicial statements as testimonial evidence against him violated his rights to confrontation under the Sixth Amendment. *Crawford*, 541 U.S. at 68, 124 S. Ct. at 1374 (holding that "[w]here testimonial evidence is at issue. . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination"). Violations of the Confrontation Clause are subject to harmless error analysis. *Marshall v. State*, 2010 OK CR 8, ¶ 31, 232 P.3d 467, 476. Where this constitutional right is infringed, the remaining question is whether the error is harmless beyond a reasonable doubt. *Id.* From the remaining evidence, we find that the prosecution's use of this testimonial hearsay in violation of the Confrontation Clause is harmless beyond a reasonable doubt.

> [2]Statements made by witnesses during structured police questioning are testimonial evidence under *Crawford*. *Id.*, 541 U.S. 52-53, 124 S. Ct. 1364-65 (finding "[s]tatements taken by police officers in the course of interrogations are also testimonial under even a narrow standard"); *see also Taylor v. State*, 2011 OK CR 8,¶ 38, 248 P.3d 362, 365 (holding statement during conversation between witnesses and investigator seeking to locate suspect and gather information potentially relevant to later criminal prosecution was "clearly an official interrogation of a witness in the colloquial sense defined by *Crawford*").

(ECF 15-3:2-4).

As is plain from its opinion, the OCCA considered Petitioner's challenge to the admission of the extrajudicial statements of his acquaintances and concluded that the use of otherwise properly-introduced statements violated Petitioner's rights under the Confrontation Clause when the statements were used to support the prosecution's argument that Petitioner was in possession of the pickup truck on the day of the robbery. The OCCA then considered whether the trial court's error was "harmless beyond reasonable doubt." Although the OCCA cited the standard for determining "harmless error" under Oklahoma law, the standard under federal law is the same. *See Chapman v. California*, 386 U.S. 18, 23, (1967) ("The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.") (internal quotation and citations omitted).

A petitioner's challenge to state-court evidentiary rulings is based on state law. A federal habeas court has no authority to review a state court's interpretation or application of its own state laws. *Estelle v. McGuire*, 502 U.S. 62, 67-8 (1991) (emphasizing that it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions); rather, a federal court conducting habeas review is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Id.* Accordingly, to the extent that Petitioner's ground one challenge to the trial court's evidentiary rulings is based solely on the OCCA's interpretation of state evidentiary law, the claim is not cognizable in this federal habeas corpus action and "may not provide habeas corpus relief . . . unless [those rulings] rendered the trial so fundamentally unfair that a denial of constitutional rights results." *Duckett v. Mullin*, 306 F.3d 982, 999 (10th Cir.

2002) (internal quotations omitted). Petitioner has not demonstrated that his trial was rendered fundamentally unfair by the introduction of hearsay statements.

Petitioner's next contention is that his rights under the Confrontation Clause presents a challenge based on a specific constitutional right and is, therefore, cognizable in this federal habeas action. The OCCA found that Petitioner's confrontational rights had been breached. Nevertheless, the OCCA affirmed the judgment of the state district court based on the doctrine of harmless error.

Confrontation Clause errors are subject to a harmless error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). In federal habeas cases, this Court reviews *de novo* constitutional errors found to be harmless by a state court to determine whether the error had a "substantial injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). *See Welch v. Workman*, 639 F.3d 980, 983 (10th Cir. 2011) (where state appellate court finds constitutional error to be harmless beyond a reasonable doubt, habeas court's review is limited to question of whether the admission of the testimony was harmless under *Brecht* standard).

> When a federal court considers a Confrontation Clause violation in a habeas proceeding, the relevant harmless error analysis is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error had substantial and injurious effect or influence in determining the jury's verdict. This court's harmless error review is de novo.

*Littlejohn v. Trammell*, 704 F.3d 817, 844-45 (10th Cir. 2013) (quoting *Jones v. Gibson*, 206 F.3d 946, 957 (10th Cir.2000) (citations omitted) (quoting *Van Arsdall*, 475 U.S. at 684, and *Brecht*, 507 U.S. at 623)) (internal quotation marks omitted). "[A] substantial

injurious effect exists when the court finds itself in grave doubt about the effect of the error on the jury's verdict." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006) (internal quotations omitted).

In determining whether error was harmless in the context of Confrontation Clause violations, this Court considers factors such as the "'importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and . . . the overall strength of the prosecution's case." *Littlejohn* at 845 (quoting *Van Arsdall*, 475 U.S. at 684).

In this case, the OCCA correctly determined that Petitioner's confrontational rights had been violated by the prosecution's use of the extrajudicial statements as proof of the matter asserted. The OCCA then applied the correct standard for determining whether the violation was "harmless." The OCCA stated that its decision was based on "the remaining evidence." Having engaged in a *de novo* review of the OCCA's determination regarding the constitutional error and the evidence as a whole, the undersigned is satisfied that the introduction and use of the hearsay statements did not have a substantial injurious effect or influence on the jury's verdict. The information received from the three people in the truck is corroborated by the testimony of Harrison Hodge who testified that soon after the robbery, Petitioner had told him that he had robbed an elderly man and had gotten away with it. Moreover, the prosecutor's case was sufficiently strong to negate the effect of the testimony. Thus, it is recommended that habeas relief be denied on this ground.

## 2. Mr. Mackey's In-Court Identification of Petitioner

Mr. Mackey identified Petitioner as the man who had robbed him at knife point. Petitioner contends that Mr. Mackey's in-court identification of him was the product of a highly suggestive environment and therefore unreliable. Because Petitioner did not preserve this issue by objection at trial, the OCCA considered this ground under its plain error doctrine and disagreed:

> Appellant complains in Proposition Two that the victim's identification of him at trial was tainted by a suggestive pre-trial identification at preliminary hearing. Failure to object to this in-court identification at the time of trial waived all but plain error. *Harmon v. State*, 2011 OK CR6, ¶ 42, 248 P.3d 918, 935. We consider several factors in determining whether a courtroom identification was tainted by a pre-trial confrontation including (1) the prior opportunity of the witness to observe the defendant during the alleged criminal act; (2) the degree of attention of the witness; (3) the accuracy of the witness's prior identification; (4) the witness's level of certainty; and (5) the time between the crime and the confrontation. *Cole v. State*, 1988 OK CR 288, ¶ 8, 766 P.2d 358, 360. Considering these factors here, the eyewitness identification was sufficiently reliable and properly admitted. No plain error occurred.

(ECF No. 15-3:4-5).

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 131 S Ct. at 784-785. Here, the OCCA's review for "plain error" resulted in a decision on the merits because the OCCA's decision was based on principles of federal law. *See Douglas v. Workman*, 560 F.3d 1156, 1177-1178 (10th Cir. 2009) (§

11

2254 deference is applicable to a state court's plain error review if the state court finds the claim lacks merit under federal law).

In this case, the OCCA cited one of its own cases in determining whether the in-court identification was tainted by the pre-trial confrontation. But the factors delineated in *Cole v. State* mirror those identified by the Supreme Court in *Manson v. Brathwaite*, 432 U.S. 98, 114-116 (1977). The OCCA's decision is neither contrary to, nor an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Thus, Petitioner's second ground for relief should be denied.

### 3. Evidentiary Harpoons

Petitioner contends that two police officers who investigated the robbery improperly testified in such a way to suggest that Petitioner had formerly participated in a criminal enterprise. In response to a question from the prosecution as to what color Petitioner liked to wear, Officer Alexander responded that Keiston Price told him that "red was [Petitioner's] favorite color because he was an ex member of the Bloods." (TR. 184); (ECF No. 15-1:25). In response to a question as to whether he had learned during the course of his investigation that Petitioner was "inclined to wear red," Officer Seth Thompson testified that 'Mr. Price informed us that [Petitioner] liked the color red because he was an ex-gang member." (TR. 288); (ECF No. 15-1: 26).

"[A]n 'evidentiary harpoon' is a metaphorical term used to describe an attempt by a government witness to deliberately offer inadmissible testimony for the purpose of prejudicing the defendant." *United States v. Cavely*, 318 F.3d 987, 996 n. 2 (10th Cir. 2003). Under Oklahoma law, "an evidentiary harpoon" exists only when the witness

12

voluntarily "inject[s] information indicating other crimes." *Bruner v. State*, 612 P.2d 1375, 1378-79 (Okla. Crim. App. 1980).

The OCCA considered Ground three under Oklahoma law and rejected Petitioner's contention that the testimony should be considered "evidentiary harpoons:"

> Appellant argues in Proposition Three that evidentiary harpoons deprived him of a fair trial, when police officers testified that they received information indicating Appellant wore red due to his former membership in the Bloods gang. Counsel failed to object to this testimony, and thus waived all but plain error. *Simpson v. State*, 1994 OK CR 40, ¶ 2, 876 P.2d 690, 692. An evidentiary harpoon occurs when: (1) an experienced police officer, (2) makes a voluntary statement, (3) which is willfully jabbed, (4) in order to inject information of other crimes, (5) the statement is calculated to prejudice the accused, and (6) is prejudicial to the rights of the accused on trial. *Bruner v. State*, 1980 OK CR 52, 612 P.2d. 1375. 1378-1379. These comments were responsive to the questions asked and did not inject evidence of other crimes. This proposition is without merit.

(ECF No. 15-3, 4). As discussed above, state court evidentiary rulings are not cognizable in federal habeas actions unless the errors rendered the state trial fundamentally unfair. A review of the evidence admitted in this trial convinces the undersigned that Petitioner's trial was not rendered fundamentally unfair. Moreover, the decision of the OCCA was neither contrary to, nor an unreasonable application of Supreme Court law. To the extent that the OCAA's decision was based on factual findings, Petitioner has not rebutted the presumption of correctness afforded those findings by clear and convincing evidence. Thus, habeas relief is not warranted on this ground.

**4. Prosecutorial Misconduct**

Petitioner contends that the prosecutor engaged in misconduct by invoking sympathy for the victim and inciting societal alarm. First, Petitioner contends that during the opening statement, the prosecutor invocated sympathy for the victim by characterizing the robbery as "terrorism," by revealing that Christopher Mackey had been wounded during his military service in Afghanistan, and by stating that the pain medications stolen in the robbery had been prescribed to him for the resulting pain. (TR. 113-115). He further contends that the prosecutor's closing statement invoked societal alarm by stating that people like Petitioner chose elderly victims because of the likelihood of getting away with the crime. (TR. 369). The OCCA reviewed this ground for relief for plain error and found none:

> In Proposition Four, Appellant claims for the first time on appeal that the prosecutor improperly invoked sympathy for the victims and appealed to societal alarm in several comments to the jury. Counsel failed to object to these comments at trial, and thus waived all but plain error. *Simpson v. State*, 1994 OK CR 40, ¶ 2, 876 P.2d 690, 692. This Court will reverse for prosecutorial misconduct where grossly improper and unwarranted argument affects a defendant's rights. *Howell v. State*, 2006 OK CR 28, ¶ 11, 138 P.3d 549, 556. The comments were not grossly improper. No relief is required.

(ECF No. 15-3:5).

In *Donnelly v. Christoforo*, 416 U.S. 637 (1974), the Supreme Court held that prosecutorial misconduct could warrant habeas relief. Different standards of review apply, depending on the nature of the alleged misconduct:

> This is not a case in which the State has denied a defendant the benefit of a specific provision of the Bill of Rights, such as

14

> the right to counsel, *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), or in which the prosecutor's remarks so prejudiced a specific right, such as the privilege against compulsory self-incrimination, as to amount to a denial of that right. *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). When specific guarantees of the Bill of Rights are involved, this Court has taken special care to assure that prosecutorial conduct in no way impermissibly infringes them. But here the claim is only that a prosecutor's remark about respondent's expectations at trial by itself so infected the trial with unfairness as to make the resulting conviction a denial of due process. We do not believe that examination of the entire proceedings in this case supports that contention

*Id.* at 643. The remarks in question should be reviewed in the context of the entire trial, not in isolation. *Id.* at 645.

In this case, the prosecutor's comments were not improper. The comments in the prosecutor's opening statement were a summary of what the evidence would prove, and the statements did not rise to the level of a due process violation. The prosecutor's comments in closing argument were designed to highlight the prosecution's theory that Petitioner chose an elderly victim because such victims are less likely to defend themselves. The statements were not designed to raise societal alarm. The OCCA's decision was neither contrary to, nor an unreasonable interpretation of Supreme Court law. Thus, habeas relief should be denied on this ground.

### 5. Admission of Evidence of Prior Suspended Sentence

Petitioner's trial was bifurcated so that the admission of evidence of his prior felony convictions would not be before the jury during the guilt phase of the trial. But in the sentencing phase of the trial, the prosecution necessarily introduced evidence of Petitioner's former convictions. To prove one of the convictions, the prosecutor introduced

an un-redacted copy of an order revoking a suspended sentence. Petitioner's challenge to the evidence was grounded in state law, and the OCCA's decision rested solely on state law:

> In Proposition Five, Appellant argues that the district court abused its discretion in the admission of certain evidence during the sentencing phase of the trial. The state offered to prove one of the Appellants prior convictions with State Exhibit 20, an *order revoking Appellants probation* on a felony conviction entered by the District Court of Greer County. Counsel failed to object to this exhibit at trial, and thus waived all but plain error. *Simpson v. State*, 1994 OK CR 40, ¶ 2, 876 P.2d 690, 692. In Appellant's companion case, *Goudeau v. State*, Case. No. F-2010-1182, we found that the district court abused its discretion in admitting this Greer County order revoking Appellant's suspended sentence to prove his prior conviction over Appellant's timely objection. *Carter v. State*, 1987 OK CR 248, ¶¶ 20-24, 746 P.2d 193, 197-98; *Bean v. State*, 1964 OK CR 59, 395 P.2d 753. In this case, however, we cannot say that the trial court's error went to the foundation of the case or took from Appellant any right essential to his defense. This proposition is denied. *Simpson v. State*, 1994 OK CR 40, ¶12, 876 P.2d 690, 695.

(ECF No. 15-3:5-6).

This issue is grounded in state law rules of evidence and is not cognizable in this habeas proceeding unless Petitioner can demonstrate that the error denied him a fundamentally fair sentencing procedure. *See Hooks*, 689 F.3d at 1180. As the OCCA found, evidence of two other felonies was properly introduced. Because the sentencing range was based on "two or more felonies," Petitioner cannot demonstrate that he was prejudiced by the evidence improperly introduced evidence of the third. Petitioner cannot, therefore, demonstrate fundamental unfairness of the sentencing procedure. Thus, habeas relief is not necessary on Ground Five.

### 6. Ineffective Assistance of Counsel

Petitioner contends his counsel was ineffective in failing to move for a mistrial when testimony was introduced regarding Petitioner's plan to rob another elderly victim:

> Proposition Six alleges that Appellant received ineffective assistance of counsel when his trial attorney failed to move for a mistrial during testimony about Appellant's plan to rob another elderly victim. We review Appellant's claim of ineffective assistance of counsel applying the familiar test required by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L Ed.2d 674 (1984). Appellant must establish: (1) that trial counsel's performance was deficient; and (2) that he was prejudiced by the deficient performance. *Spears v. State*, 1995 OK CR 36, ¶ 54, 900 P.2d 431, 445. Testimony concerning Appellant's stated plans to rob another elderly victim was probative of Appellant's common scheme or plan, and his identity as the robber in this case, and was clearly admissible. 12 O.S. 2001, § 2404(B). Appellant therefore cannot show that he was prejudiced by trial counsel's failure to move for a mistrial. Proposition Six is denied.

(ECF No. 15-1:6). The OCCA interpreted Oklahoma State law and determined that the evidence in question was properly admitted. Because the evidence was properly admitted under Oklahoma law, defense counsel's failure to move for a mistrial could not be considered "deficient performance," and, as the OCCA held, Petitioner could not have been prejudiced. Thus, it is recommended that habeas relief be denied on this issue.

### 7. Excessive Sentence

Petitioner contends the life sentence he received upon conviction of this crime is excessive. (ECF 15-1:43-48). The OCCA rejected Petitioner's request for sentence modification:

> In Proposition Seven, Appellant claims his sentence should be modified. The sentence for this heinous offense is neither a

> violation of the applicable statute nor a shocking injustice. Modification of the sentence is unwarranted. *Rea v. State*, 2001 OK CR ¶ 5, 34 P.3d148, 149 ("shock the conscience" is appropriate standard of review of excessiveness of sentence).

Petitioner's challenge to the length of his sentence is a matter of state law and, without more, presents no federal constitutional issue cognizable on federal habeas corpus review.

The Supreme Court has clearly established that "the Eighth Amendment prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime." *Ewing v. California*, 538 U.S. 11, 21 (2003) (citation omitted). However, "outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Id.* (citation and internal brackets omitted). Indeed, the court "afford[s] wide discretion to the state trial court's sentencing decision, and challenges to that decision are not generally constitutionally cognizable, unless it is shown the sentence imposed is outside the statutory limits or unauthorized by law." *Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000). Ordinarily, habeas review "ends once [the court] determine[s] the sentence is within the limitation set by statute." *Id.*; *see also Britt v. Embry*, 302 F. App'x 774, 783 (10th Cir. 2008) (holding that because petitioner's sentence was within the statutory range, "habeas review of [the] sentence" was complete). Because the sentence imposed is within the range set by state law, no relief on this ground is warranted.

### 8. Cumulative Error

Petitioner asserts that the cumulative effect of trial errors deprived him of a fair trial. Although Petitioner raised this ground for relief on direct appeal, the OCCA did not

address it. This Court must, therefore, review this ground for relief *de novo*. *Hamilton v. Mullin*, 436 F.3d 1181, 1196 (10th Cir. 2006).

Cumulative error is present when the "cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error." *Duckett v. Mullin*, 306 F.3d 982, 992 (10th Cir. 2002) (*quoting United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir. 1990)). "A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Id.* Cumulative impact of non-errors is not part of the analysis. *Le v. Mullin*, 311 F.3d 1002, 1023 (10th Cir. 2002) (*citing United States v. Rivera*, 900 F.2d 1462, 1471 (10th Cir. 1990)). In this case, the OCCA identified one constitutional error—the violation of Petitioner's rights under the Confrontation Clause. As discussed above, this error was properly found to be harmless. The only other error identified by the OCCA was the admission of evidence indicating that Petitioner had previously been given a suspended sentence—evidence improperly admitted under *State law*. As discussed above, the OCCA determined that the erroneously-admitted evidence did not undermine the foundation of the case or take away any right essential to the case. Even considering the combined effects of the harmless constitutional error and the harmless error of state law, this Court is not convinced that Petitioner received a fundamentally unfair trial. Thus, relief on this ground should be denied.

## RECOMMENDATION

It is recommended that the Petition for Writ of Habeas Corpus be **DENIED**.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **October 2, 2014**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

**ENTERED** on September 15, 2014.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE